UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 22-173 |
| DAVID THOMPSON | SECTION M (1) |

## ORDER & REASONS

Before the Court is a motion to dismiss indictment filed by defendant David Thompson.[1] Thompson seeks dismissal of the single-count indictment, which charges him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), based on his contention that the statute violates the Second Amendment in light of the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The United States of America (the "Government") opposes the motion,[2] and Thompson replies in further support of it.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion.

I.  **BACKGROUND**[4]

The Government alleges that, on or about July 7, 2022, Thompson knowingly possessed a semiautomatic pistol after having been previously convicted of crimes he knew to be a felony.[5] Particularly, the Government alleges that Thompson had been convicted of five felonies between 1994 and 2017, including convictions for possession of narcotics, burglary, and attempted

---

[1] R. Doc. 32.
[2] R. Doc. 41.
[3] R. Doc. 51.
[4] A comprehensive recitation of the facts leading up to Thompson's arrest in this matter can be found in the Court's April 27, 2023 Order & Reasons denying Thompson's motion to suppress. R. Doc. 52.
[5] R. Doc. 19 at 1-2.

possession of a firearm by a convicted felon.[6] Section 922(g)(1) provides, in pertinent part, that "[i]t shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ... possess in or affecting commerce, any firearm or ammunition." Accordingly, the Government charged Thompson with violation of 18 U.S.C. § 922(g)(1) in a single-count indictment after he was discovered to be in possession of a pistol following a traffic stop in New Orleans.

## II.     PENDING MOTION

Thompson argues that the Supreme Court's decision in *Bruen* abrogated the Fifth Circuit's controlling two-step approach[7] for evaluating the constitutionality of laws that place restrictions on Second Amendment rights.[8] Therefore, he maintains, the Fifth Circuit's line of precedent upholding the constitutionality of § 922(g)(1) under the two-step approach has been overruled and the statute must be reevaluated with the test delineated in *Bruen* – a conclusion he says has recently been reached by the Fifth Circuit in another case.[9] Under *Bruen*, Thompson asserts that § 922(g)(1) is both facially unconstitutional and unconstitutional as applied to him because the Government cannot demonstrate a historical tradition of permanent, indiscriminate denial of firearm possession to all convicted felons – including those, such as him, who have never been convicted of a violent offense.[10]

---

[6] *Id.*
[7] The Fifth Circuit adopted this framework following the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010). *See, e.g.*, *Hollis v. Lynch*, 827 F.3d 436, 446-47 (5th Cir. 2016). As the Supreme Court in *Bruen* explained, "[i]n the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125.
[8] R. Doc. 32-1 at 3.
[9] *Id.* at 3-4 (citing *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023)).
[10] *Id.* at 4-9.

2

In opposition, the Government argues that "[n]othing in *Bruen* calls into question the Fifth Circuit cases holding that Section 922(g)(1) is constitutional."[11] The Government maintains that, in *Bruen*, the Supreme Court simply expounded upon its holdings in *Heller* and *McDonald*, which expressly declined to cast doubt on existing prohibitions against a felon's possession of firearms.[12] Because *Bruen* did not "'unequivocally overrule prior precedent,'" says the Government, this Court is bound by pre- and post-*Heller* caselaw upholding the constitutionality of 18 U.S.C. § 922(g)(1).[13] And, even if the Court decides that *Bruen* overruled this line of cases, the Government argues that § 922(g)(1) still passes constitutional muster under *Bruen*'s historical tradition test.[14]

In reply to the Government's opposition, Thompson maintains that a recent Fifth Circuit case, *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), mandates the reevaluation of prior circuit precedent upholding the constitutionality of § 922(g)(1) in light of *Bruen*.[15] Thompson also argues that the Government, in applying the test mandated by *Bruen*, has failed to satisfy its burden of showing any historical support for the broad, lifetime ban on gun possession imposed by the statute on nonviolent felons and, so, the indictment against him should be dismissed.[16]

### III. LAW & ANALYSIS

Thompson argues that *Bruen*'s abrogation of the two-step approach unequivocally overruled Fifth Circuit precedent affirming the constitutionality of 18 U.S.C. § 922(g)(1) because those cases relied on the two-step approach for evaluating the constitutionality of the statute. But a review of *Bruen*, *Heller*, and pre-*Bruen* Fifth Circuit precedent bearing on the constitutionality of § 922(g)(1) makes plain that this Court is in no position to declare that *Bruen* overturned

---

[11] R. Doc. 41 at 5 & n.3.
[12] *Id.* at 4-5.
[13] *Id.* at 5 (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021)).
[14] *Id.* at 6-15.
[15] R. Doc. 51 at 1-2.
[16] *Id.* at 3-6, 13-14.

otherwise controlling caselaw. And, notwithstanding Thompson's assertions, the Fifth Circuit's decision in *Rahimi* does not compel the Court to "consider the constitutionality of § 922(g)(1) anew."[17]

### A. Section 922(g)(1) from *Heller* to *Bruen*

In *Heller*, the Supreme Court concluded "that the Second Amendment ... codified a pre-existing right" for individuals to "possess and carry weapons in case of confrontation." 554 U.S. at 592 (emphasis omitted). However, the *Heller* Court recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and can be subject to certain restrictions, including those "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626.[18] But "*Heller* did not set forth an analytical framework with which to evaluate firearms regulations in future cases." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012). After *Heller*, the Fifth Circuit, along with the other circuits, "'adopted a two-step inquiry for analyzing laws that might impact the Second Amendment.'" *United States v. McGinnis*, 956 F.3d 747, 753 (5th Cir. 2020) (quoting *Hollis*, 827 F.3d at 446). That inquiry proceeds as follows:

> First, we ask whether the conduct at issue falls within the scope of the Second Amendment right. To make that determination, we look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee. If the burdened conduct falls outside the scope of the Second Amendment, then the law is constitutional and the inquiry is over. Otherwise, we proceed to step two, where we must determine and apply the appropriate level of means-ends scrutiny – either strict or intermediate.

*Id.* at 754 (quotations and citations omitted).

Prior to *Heller*, the Fifth Circuit upheld the constitutionality of another provision of 18 U.S.C. § 922(g) after conducting an exhaustive analysis of the country's historical tradition of

---

[17] *Id.* at 2.
[18] In *McDonald*, the Court reiterated and reenforced its recognition of these restrictions. 561 U.S. at 786.

prohibiting the possession of firearms by certain citizens, including "felons, infants and those of unsound mind." *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001). The Fifth Circuit subsequently applied the historical analysis laid out in *Emerson* to uphold the constitutionality of the exact provision at issue here: 18 U.S.C. § 922(g)(1). *See United States v. Darrington*, 351 F.3d 632, 633-34 (5th Cir. 2003). Since *Heller*, the Fifth Circuit has consistently reaffirmed these pre-*Heller* decisions – which relied on an analysis of the country's history and tradition of limiting firearm possession by certain individuals – in concluding that prohibitions on a convicted felon's ability to possess firearms do not violate the Second Amendment. *See, e.g.*, *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (observing that, pre- and post-*Heller*, the Fifth Circuit "had determined that criminal prohibitions on felons (violent *or nonviolent*) possessing firearms did not violate [the Second Amendment]") (emphasis added). Although each of these cases predates *Bruen*, a comparison of this Fifth Circuit precedent to the holding in *Bruen* makes clear that *Bruen* did not unequivocally overturn this otherwise binding caselaw concerning the constitutionality of § 922(g)(1).

*Bruen* involved a challenge to New York's licensing regime for possessing firearms outside of the home. Finding that the restrictions violated the Second Amendment, the *Bruen* Court expressly abrogated the second step (the means-end scrutiny) of the post-*Heller* two-step analysis:

> Despite the popularity of this two-step approach, it is one step too many. *Step one of the predominant framework is broadly consistent* with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Bruen*, 142 S. Ct. at 2127 (emphasis added). With step two abrogated, the *Bruen* Court defined the proper test as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id.* at 2129-30 (quotation omitted).

Thompson argues that the abrogation of the second step in the two-step analysis requires a reevaluation of § 922(g)(1) entirely. But, as other district courts within the Fifth Circuit have determined when faced with this same argument, *Bruen* does not "unequivocally overrule" the Fifth Circuit precedent which concluded, based on the text and history of the Second Amendment, that § 922(g)(1) is constitutional. *See, e.g.*, *United States v. Clay*, 2023 WL 3059155, at *2 (S.D. Tex. Apr. 23, 2023) ("[T]he Fifth Circuit has previously held that restrictions prohibiting convicted felons from possessing firearms do not violate the Second Amendment. Nothing in *Bruen* changed those holdings, which remain binding.") (citations omitted); *United States v. Mosley*, 2023 WL 2777473, at *2 (N.D. Tex. Apr. 4, 2023) ("The Fifth Circuit has held that restrictions prohibiting convicted felons from possessing firearms do not violate the Second Amendment. *Bruen* did not change that fundamental premise.") (citations omitted); *United States v. Grinage*, 2022 WL 17420390, at *3 (W.D. Tex. Dec. 5, 2022) ("Nothing in the *Bruen* decision calls into question the precedential effect of Fifth Circuit decisions finding § 922(g)(1) constitutional based on the Second Amendment's text and history."). And, even if *Bruen* did unequivocally overturn the Fifth Circuit precedent, this Court would not have the authority to declare that to be the case.

**B. This Court Lacks the Power to Declare Pre-*Bruen* Precedent to be Overturned**

Unsurprisingly, a district court is "not free to overturn" decisions of the Fifth Circuit. *Bonvillian Marine*, 19 F.4th at 789. In fact, the Fifth Circuit has taken great pains to prescribe its own authority to do so. As the court in *Bonvillian Marine* explained:

> It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court. This rule is strict and rigidly applied. Thus, for a Supreme Court decision to change our Circuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent. Whether an intervening Supreme Court decision merely illuminates or unequivocally overrules is a judgment call – there is no hard-and-fast requirement, for instance, that a Supreme Court decision explicitly overrule the circuit precedent at issue, or specifically address the precise question of law at issue. Rather, a latter panel must simply determine that a former panel's decision has fallen unequivocally out of step with some intervening change in the law.

*Id.* at 792 (quotations, citations, and alteration omitted). Therefore, the authority to determine whether the Fifth Circuit's pre-*Bruen* precedent regarding the constitutionality of § 922(g)(1) has been overturned by an intervening change in the law lies with the Fifth Circuit alone. And this conclusion holds notwithstanding Thompson's argument that a recent panel of the Fifth Circuit, in *Rahimi*, held that *Bruen* overturned prior precedent concerning the constitutionality of a different subsection of 18 U.S.C. § 922.

In *Rahimi*, the Fifth Circuit confronted a Second Amendment challenge to 18 U.S.C. § 922(g)(8), which prohibits the possession of a firearm by individuals who are subject to domestic violence restraining orders. 61 F.4th at 448-49. The court found that *Bruen did* overturn precedent upholding the constitutionality of that provision and, after conducting the historical tradition analysis, found that § 922(g)(8) violated the Second Amendment. But *Rahimi* is immediately distinguishable, as the petitioner there was simply subject to a "civil proceeding" and had only been "*suspected* of other criminal conduct," as opposed to being "a convicted felon or otherwise subject to another 'longstanding prohibition on the possession of firearms.'" *Rahimi*, 61 F.4th at 452 (quoting *Heller*, 554 U.S. at 626) (emphasis in original; alteration omitted). Thus, contrary to calling 18 U.S.C. § 922(g)(1) into question, *Rahimi* recognizes, as did the Supreme Court in *Heller* and *McDonald*, that the history and tradition of the Second Amendment make clear that prohibiting

7

convicted felons from possessing firearms is constitutionally tolerable. In short, the court in *Rahimi* had no occasion to address the constitutionality of § 922(g)(1), nor did it purport to do so. As such, Thompson's argument fails.

*     *     *     *

*Bruen* did not disturb binding Fifth Circuit precedent regarding the constitutionality of 18 U.S.C. § 922(g)(1), and, even if it did, this Court lacks the authority to overturn those decisions on its own. Therefore, applying that precedent, the Court concludes that § 922(g)(1) does not violate the Second Amendment either on its face or as applied here and Thompson's motion to dismiss the indictment should be denied.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Thompson's motion to dismiss the indictment (R. Doc. 32) is DENIED.

New Orleans, Louisiana, this 27th day of April, 2023.

                                                      BARRY W. ASHE
                                                     UNITED STATES DISTRICT JUDGE